Miss Evelyn Little D/B/A Express Liquor Store,

*v.*

Alfred T. MacFarland, Commissioner.

Arthur M. Weiss D/B/A Weiss Liquor Store,

*v.*

Alfred T. MacFarland, Commissioner.

Cecil Collins D/B/A West Nashville Liquor Store,

*v.*

Alfred T. MacFarland, Commissioner.

Don R. Cameron, Jr. D/B/A Franklin Liquor Store,

*v.*

Alfred T. MacFarland, Commissioner.

(*Nashville,* December Term, 1959.)

Opinion filed June 6, 1960.

666

John J. Hooker, and Jack Norman, Nashville, for plaintiffs in error.

Henry C. Foutch, Assistant Attorney General, for the State.

Mr. Justice Burnett delivered the opinion of the Court.

The four plaintiffs in error listed had licenses granted to each of them as a retailer for the privilege of retailing alcoholic beverages. The Commissioner, defendant in error, revoked said licenses pursuant to notice given these defendants on July 6, 1959. After revocation of

the respective licenses petition for certiorari was granted by the Circuit Court of Davidson County, wherein the matter was heard, and the trial judge, after hearing the same found that there was material evidence to support the action of the Commissioner, and that said action was not arbitrary and capricious. He thus affirmed the action of the Commissioner in revoking the licenses of these parties. From this order of the Circuit Court an appeal has been seasonably perfected, able briefs filed as well as very able arguments heard on each side. We now have the matter for disposition.

In the Circuit Court the parties by stipulation agreed that the matters could be consolidated and heard together as the questions involved are the same; only various degrees in the matter of proof as to the amount of liquor sold is the only difference. The ultimate result is that this difference does not affect the result of the lawsuit one way or the other.

Thus it is that we should, before entering upon the disposition of these cases, remember the legal situation that we face in determining this case. This was expressed by the writer in *Boyd v. General Motors Acceptance Corp.*, 205 Tenn. 658, 330 S.W.2d 13, 17, thus:

"* * * Such a writ does not bring up for determination any question except the question of whether the Commissioner exceeded his jurisdiction, or acted illegally, arbitrarily or fraudulently. Under such a writ questions of law only are reviewed by the Court. * * * The court is limited to whether or not this hearing officer has exceeded his jurisdiction or acted fraudulently, illegally, or arbitrarily. If there is any material evidence to sustain the finding of the hearing

officer under such circumstances and there is no illegal, fraudulent or arbitrary action therein, the court must sustain the finding of the hearing officer.''

When we thus approach the present cases under this view of the situation, we find that the Commissioner had before him various audits and records of these different plaintiffs in error as to the amount of whiskey that had been sold various and sundry individuals for the months of January through May and then for the subsequent two months of June and July. These reports show that the different stores had sold varying amounts running into the hundreds of gallons or cases of whiskey to each of various and sundry people over the State. In any number of instances the amount of dollars paid by individuals ran as high as $75,000 over a period of these few months. Let us take for instance the West Nashville Liquor Store which sold to one J. P. Dolan, for the months of January through May, 3,263 cases of liquor. From this summary covering many sales to various and sundry people the Commissioner found that these sales were not in conformity with their retail licenses, as is defined by statute of what a retail sale is, but would in fact probably come under a wholesale provision. Thus he found that there was ample evidence by the showing of how much had been sold to these individuals that there was a violation of the retail license in each instance.

None of the plaintiffs in error took the witness stand to rebut, retaliate or show in any way why so much liquor had been sold to each of these individuals listed in these various sales; or to attempt to show that said sales were in conformity with and in compliance with the statutory definition of a retailer or a retail sale, as to be hereinafter referred to.

■■ We think, without peradventure of a doubt, under this proof that this amounts to ample material evidence for the Commissioner to hold that such sales were evidence and showed a clear violation of retailer's license. Anyone to reach a different conclusion under the definition of such a license certainly would have had to have been very naive and blind to reality. The mere fact that none of these parties took the stand to refute, explain or amplify these things in any way was another situation that the Commissioner could take into account. Clearly under this evidence there was the glaring inference that any trier of facts would have had to have found against the plaintiffs in error, i. e. the amount of these sales showed they were for resale—not personal use for a banquet or otherwise.

It must be kept in mind that in trying this lawsuit it is not being tried as a criminal lawsuit in prosecution of these people for violation of any criminal law, but is purely to show that these people have not complied with the agreement that they made with the State through the Commissioner of Revenue when these retail licenses were issued to each of these parties.

This is not a case of an unreasonable regulation being passed during the term of the license as in *Wise v. McCanless,* 183 Tenn. 107, 191 S.W.2d 169, nor any of the prohibited practices as is set out in Section 57-142, T.C.A., it is that the license is for one thing and it was being used by these parties for another.

■■ Section 57-117, T.C.A., provides for retailers' licenses and fees to be paid etc. The preceding Section provides for wholesalers' licenses, fees, etc. By casual

examination of these two Sections it is seen that the retailers' license fee is one-half that of the wholesalers' license fee. Thus, of course, it is that it was the duty of the Commissioner, if he finds that people who have been issued the license as retailers have gone into another field and are doing what those who paid for a license that is twice as much were entitled to do under their license, to call them on the carpet. If the proof shows that this is true, he has the discretionary right to revoke these licenses. This being purely on the basis of a legal license fee to do a certain act. When a fee is paid or license obtained to do that act, they must comply with the provisions governing the license which they have.

Section 57-119, T.C.A., provides:

"It is made the duty of the commissioner to collect all license fees paid or due the state on account of each license issued to a wholesale or retail dealer in alcoholic spirituous beverages, or in respect to the continuance of any of said licenses, and said commissioner shall deposit said collections monthly with the treasurer of the state, for the general funds of the state."

Among other things in the notice to these plaintiffs in error, the Commissioner charged them with violation of certain sub-sections of Section 57-106, T.C.A. This Section of the Code is a section defining various terms used in the Chapter 57-106 through 57-151. Among other things that these parties were charged with violating was sub-section (5), which is:

"(5) 'Retail sale' or 'sale at retail' means a sale to a consumer or to any person for any purpose other than for resale.

"(6) 'Retailer' means any person who sells at retail any beverage for the sale of which a license is required under the provisions of secs. 57-106—57-150.

\* \* \* \* \* \*

"(10) 'Wholesale sale' or 'sale at wholesale' means a sale to any person for purposes of resale."

██ A very able argument in the brief and at the bar was made that these are merely definitions of provisions and do not charge any violation of the statute. We think this is a misconception because these definitions are definitions, under this Act under which the license was granted, of the breadth of these respective retail licenses. Thus it is that when we read the definitions of retail sale, or retailer and wholesaler we readily see then what these parties have done, as hereinbefore referred to, is a clear violation of the provisions under which a retail license was granted to each of these individuals. The charge is not that these definitions constitute a violation of the law. They are merely definitions to show what the license was granted for; what that means, not for what any violation of the law might mean. Thus it is that if there has been a violation under these terms, then the Commissioner within his discretion may revoke these licenses so long as he has not done so arbitrarily and capriciously.

In 30 Am.Jur., we find many pages covering the question of intoxicating liquors and revocation and granting of licenses etc. This very apt and pertinent observation to the present case is there made:

"Liquor license laws are primarily for the protection of the community, and not for the benefit of liquor

dealers, their object being to restrict the traffic to the few, and not to open it to all without restraint, and to insure the sales of liquors in quantities not likely to encourage intemperance, and at places and times, and by persons, conducive to the same end." 30 Am.Jur., Sec. 116, p. 602.

Immediately following the above quotation in the next Section, this is said:

"A license to engage in the liquor traffic is not a grant, and confers no irrevocable, vested, or proprietary rights upon the licensee which cannot be revoked or terminated by the licensing authorities. It is a mere personal and temporary permit or privilege and not a natural right, to be enjoyed only so long as the conditions and restrictions governing their continuance are complied with, to do what could not be lawfully done without it, and it is not property in any constitutional sense."

In this same work at page 635, Section 177, this apt statement is made:

"In the revoking of licenses to sell intoxicating liquors, much is left to the discretion of the court or body charged with that duty, although their almost absolute power in this respect does not imply arbitrary or capricious or malicious exercise."

And on the following page this apt statement is made:

" ** * in most jurisdictions the law does not require the same strictness as to proof and procedure in proceedings to revoke liquor licenses that obtains in action or criminal prosecutions generally, and the proceedings may be summary."

674

And at Section 179 on page 636, this apt statement is made:

"Where discretion is vested in administrative officers to revoke or suspend liquor licenses, upon review the courts should not interfere with the exercise of such discretion unless it plainly appears that there has been an abuse thereof."

The statements we have quoted from American Jurisprudence, supra, are in accord with various decisions of courts of this State in various and sundry situations where the question involving the liquor laws has arisen. The statements that we have quoted are supported by authorities cited in the footnotes from excellent jurisdictions.

We thus are satisfied without going into the various and sundry other questions that are raised in these proceedings that from what we have said above the judgment of the trial court must be affirmed.