**Rufus BREY, d/b/a Hub Bar, Appellant,**

v.

**ALCOHOLIC BEVERAGE CONTROL BOARD et al., etc., Appellees.**

Court of Appeals of Kentucky.

March 6, 1970.

William E. Rummage, Beard, Rummage & Kamuf, Owensboro, for appellant.

John D. Darnell, Chancellor & Darnell, Frankfort, for appellees.

STEINFELD, Judge.

The Alcoholic Beverage Control Board revoked the licenses held by appellant Rufus Brey to sell beer and liquor at retail. The violation charged was that the licensee or his " * * * agents, servants and/or employees did on Monday, November 6, 1967, at approximately 11:00 P.M., sell and deliver a mixed drink of alcoholic beverages to Marie Anne Day, age 17, * * * ". KRS 243.500; 244.080(1). At the hearing Miss Day told of the violation and said that on more than one occasion she had been served alcoholic drinks at the licensee's place of business and that no request had ever been made of her for any identification. Brey did not deny the occurrence but his bartender said he did not remember Miss Day being on the premises and that he had " * * * never seen her in the Hub Bar before in my life". He also stated that the customary practice "every day, every night" was to make inquiry to determine ages. A police detective testified of frequently visiting the Hub Bar, of the management's cooperation with him in checking "ID' cards" and of evicting young people who misused the cards. No other proof was introduced.

From the order of revocation the licensee appealed to the Franklin Circuit Court. KRS 243.560(1). The statement of appeal was not required to, and specified no grounds on which it was based. It made no allegations except that the licenses were revoked and that the exhibit attached to it was a copy of the order of the board taking that action. KRS 243.560(4). That order showed that the board had found as a fact that the offense had occurred and that it had concluded "There was sufficient evidence presented at the hearing to sustain the charge that the licensee did violate KRS 244.080(1), as charged in the citation."

Subsection (3) of KRS 243.560 reads in part: "If the appeal is from an order refusing, revoking or suspending a license, the board, when served with the summons, or such person as the board may designate, shall appear and defend the action of the board in refusing, revoking or suspending the license in question."

The procedure to be followed on such an appeal is set forth in KRS 243.570(2) as follows:

"(2) No new or additional evidence shall be introduced in the Franklin circuit court except as to the fraud or misconduct of some party engaged in the administration of this chapter and affecting the order appealed from, but the court shall otherwise hear the case upon the record as attested by the board, and shall in all respects dispose of the appeal in a summary manner. Its review shall be limited to determining whether or not:

(a) The board acted without or in excess of its powers;

(b) The order appealed from was procured by fraud;

(c) If questions of fact are in issue, whether or not any substantial evidence supports the order appealed from."

The record made in the circuit court is silent as to the proceedings there except that it adjudged "1. The appellee board acted within its discretion in entering the ORDER appealed from, marked appellant's

'Exhibit A'. 2. The appeal of the appellant is dismissed at its cost." From that judgment Brey appeals.

KRS 243.480 authorizes suspension and KRS 243.490 permits revocation of the licenses issued to appellant for violation of the statute for which he was cited and for other causes. He contends that the board did not treat " * * * Appellant as they treat everyone else under like and similar circumstances according to standards and rules of actions prescribed", and " * * * their action in revoking the * * * Licenses was unreasonable and arbitrary." Also that the " * * * Board in revoking (the) Licenses amounted to violation of procedural due process and * * * such action (was not) supported by substantial evidence."

Brey notes that Miss Day was incarcerated as a juvenile delinquent at the time she testified and that her evidence was not worthy of belief. He argues that no license has ever been revoked for the first offense, particularly on unsupported testimony of an incarcerated person and that suspension rather than revocation is normal under these circumstances. Cited is Commonwealth ex rel. Meredith v. Frost, 295 Ky. 137, 172 S.W.2d 905 (1943), wherein we said:

" * * * administrative officers must execute the law committed to them fairly and honestly and treat everyone alike according to the standards and rules of action prescribed. Where there is a failure in this respect and it extends beyond the rudimentary requirements of fair play, it enters the realm of unreasonable and arbitrary action, from which the courts will save the citizen touched by it."

Brey refers us to Kentucky Alcoholic Beverage Control Board v. Jacobs, Ky., 269 S.W.2d 189 (1954), which held that a litigant before an administrative agency must be afforded due process and he argues that this did not occur here. Relying upon American Beauty Homes Corporation v. Louisville and Jefferson County Planning and Zoning Commission, Ky., 379 S.W.2d 450 (1964), in which we said "Unless action taken by an administrative agency is supported by substantial evidence, it is 'arbitrary' and within constitutional prohibition * * *", he insists that the licensee did not have the equal protection of the law afforded by section 2 of the Kentucky Constitution.

■ The board responds that revocation of the licenses was authorized and it notes that Miss Day testified that she had bought alcoholic drinks on occasions previous to the one for which the licensee was cited and it asks what better proof could be presented than the testimony of the person who bought the liquor. The evidence was sufficient therefore the finding of violation was warranted.

We said in Ni-Be, Inc. v. Moberly, Ky., 425 S.W.2d 567 (1968), that the circuit court did not err in affirming the orders of revocation of the licenses and cited Webb v. Kentucky Alcoholic Beverage Control Board, Ky., 291 S.W.2d 558 (1956), which held that on statutory review the court " * * * is limited to determining: (1) whether the Board acted without or in excess of its powers; (2) whether the order appealed from was procured by fraud; and (3) if questions of fact are in issue, whether or not any substantial evidence supports the order appealed from."

45 Am.Jur.2d 623, Intoxicating Liquors, section 191 in discussing appeals from an order of licensing authorities revoking a liquor license says: "Since liquor authorities usually have discretionary power to revoke or suspend the liquor licenses, upon review the courts should not interfere with the exercise of such discretion unless it plainly appears that there has been an abuse thereof." Citing Re: Suspension of License, 180 Or. 495, 177 P.2d 406; Little v. MacFarland, 206 Tenn. 665, 337 S.W.2d 233.

Our alcohol control laws give wide discretion to the board in regulating the liquor business. Kentucky Alcoholic Beverage Control Board v. Klein, 301 Ky. 757, 192 S.W.2d 735 (1946); Reinsperg v. Reed, 313 Ky. 683, 233 S.W.2d 412 (1950) and Alcoholic Beverage Control Board v. Coghill, Ky., 273 S.W.2d 570 (1954). If the board acted in excess of its power or improperly, or in any manner abused its discretion, it is not revealed by the bald record before us.

Recently we decided City of Richmond v. Howell, Ky., 448 S.W.2d 662 (1969), in which the issue was whether the City of Richmond had acted illegally in suspending a police officer for alleged misconduct. The evidence sustained the charge but the circuit court adjudged that the penalty imposed was too severe. We held the court was without authority to ameliorate the penalty. We detect no error on the part of the trial court in refusing to set aside the action of the board.

The judgment is affirmed.

EDWARD P. HILL, Jr., C. J., and MILLIKEN, NEIKIRK, and REED, JJ., concurring.

PALMORE and OSBORNE, JJ., dissenting.

PALMORE, Judge (dissenting).

In dissenting from the majority opinion I wish to make it clear that I do not hold a light view toward serving alcoholic beverages to minors. If there is satisfactory evidence that a licensed seller has done so with knowledge or reason to believe that the buyer is a minor, then I think his license should be revoked. However, the trouble in this type of case is that even the most careful and conscientious dealer is going to be fooled some time. I doubt that there is a liquor dealer in existence who has never unwittingly made a sale to a minor, for the simple reason that it is virtually impossible to achieve a 100% effective procedure for preventing it. In such an instance it is enough that the law holds him responsible anyway, regardless of his actual innocence. But it is quite another thing, in the absence of aggravating circumstances, to inflict the ultimate civil penalty, which is the destruction of his business through revocation of his license.

Literally, KRS 243.490 authorizes revocation of a license for any violation of the provisions of KRS Chapters 241, 243 and 244 or of the applicable regulations issued thereunder. That would seem to close the book, as the majority opinion closes it, on this case, because there was sufficient evidence that the appellant violated KRS 244.-080(1). But I do not think judges must or should keep their heads buried in the sand. I do not need a crystal ball to tell me that it is not the usual thing for the ABC board to revoke a license for a simple, unaggravated first offense of this kind. I have practiced law and read the newspapers long enough to know better. This man's license was taken for reasons not apparent on the face of the record. They may have been good and sufficient reasons, but they should be laid out on top of the table. I, for one, would like to know what they were. On this record, I regard the severity of the punishment as unreasonable and therefore arbitrary under § 2 of our Constitution.

It is true, as one of my colleagues suggested in conference, that juries in criminal cases have unrestricted latitude in fixing penalties within the limits set by law. There are, however, great differences between juries and administrative agencies of government, historically and otherwise. A jury is drawn from the general public, and sits in one case. An administrative body is politically appointed and exercises a governing hand from day to day and from case to case. Generally, I think the jury system is considered to be an abiding protection against oppression, whereas by their very nature administrative agencies of the executive branch of government could easily become, and in some instance

may be already, instruments of oppression and favoritism. As most lawyers would agree, we have far more to fear from these bodies than we do from juries. That is what I am talking about in this case.

It is my firm conviction that all judicial or "quasi-judicial" actions of administrative bodies brought to the courts for review should be strictly scrutinized for any indication of arbitrariness or unreasonable treatment. In this case I see it in the lack of circumstances to justify the severity of the penalty. I would set the order of revocation aside and remand the proceeding to the board for a new hearing or the entry of another order fixing the penalty at something less than a revocation of the license.

OSBORNE, J., concurs in this dissenting opinion.